## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

DON R. FOGLESONG,         )
                                     )
               Petitioner,     )
                                     )
          vs.                )     **Case No. CIV-08-82-M**
                                     )
JUSTIN JONES,            )
                                     )
                  Respondent.    )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition [Doc. No. 11], the state court transcripts[1] and the original record ("O.R."). Petitioner has filed a reply to the response [Doc. No. 19], and the case is at issue. For the reasons set forth herein, it is recommended that the petition be denied.

Petitioner is challenging his conviction, after jury trial, of manufacturing a controlled

---

[1]The state court record includes five volumes of jury trial proceedings which are designated by the date of the trial proceedings without volume numbers. For ease of reference, the undersigned will refer to the "Transcript of Jury Trial Proceedings had on the 28th Day of March, 2006" as Tr.Vol.1; the "Transcript of Jury Trial Proceedings had on the 29th Day of March, 2006" will be referred to as Tr.Vol.2; the "Transcript of Jury Trial Proceedings had on the 30th Day of March, 2006" will be referred to as Tr.Vol.3; the "Transcript of Jury Trial (Morning Session) had on the 31st day of March, 2006" will be referred to as Tr.Vol.IV; and the "Transcript of Jury Trial Proceedings had on the 31st day of March, 2006 (Afternoon Portion)" will be referred to as Tr.Vol.V.

dangerous substance (methamphetamine) (Count One) and possession of a controlled dangerous substance (methamphetamine) (Count Two), in Case No. CF-2004-2261, District Court of Oklahoma County.[2] Petition, p. 2.[3] In accordance with the jury's recommendation, Petitioner was sentenced to fifty years imprisonment on Count One and thirty years imprisonment on Count Two, and the trial court ordered that the terms of imprisonment be served concurrently. Petitioner raised four issues on direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA"). In an opinion filed on October 1, 2007, the OCCA affirmed Petitioner's judgments and sentences. Response, Ex. 3 (OCCA Summary Opinion in *Foglesong v. State*, Case No. F-2006-466 ). Petitioner filed no applications for post-conviction relief. Petition, p. 4.

In his federal habeas petition Petitioner raises the four claims he raised on direct appeal. *See generally* Response, Ex. 1. In Ground One Petitioner alleges that he was denied the opportunity to fully present his defense because the trial court refused to admit the prior transcribed trial testimony of co-defendant Tony Brantley. Petition, p. 6. Petitioner alleges in Ground Two that his convictions violate the prohibition against double jeopardy. Petition, p. 7. In Ground Three Petitioner claims that the admission of evidence seized prior to the issuance of a valid search warrant violated his Fourth Amendment rights. Petition, p. 9. In

---

[2]Petitioner was also charged with Count Three, possession of a precursor substance (pseudoephedrine) without a permit, which was dismissed by the State at the completion of evidence. Tr.Vol.V, pp. 18-19. In Count Five, Petitioner was charged with possession of a firearm while committing a felony and the jury returned a verdict of not guilty on this count. Tr.Vol.V, p. 43; O.R., p. 262. Petition was not charged in Counts Four and Six. Tr.Vol.I, pp. 34-35.

[3]The form petition begins on page two.

his final ground for relief, Petitioner alleges that his sentences are excessive and amount to cruel and unusual punishment. Petition, p. 11.

With respect to Grounds One and Two, Respondent contends that Petitioner is not entitled to habeas corpus relief because the OCCA's rejection of these claims was not contrary to or an unreasonable application Supreme Court precedent. Respondent further contends that Petitioner's Fourth Amendment claim was fully and fairly litigated in state court and therefore habeas relief is unavailable pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976). Finally, Respondent contends that Petitioner's challenge to the sentence he received is a matter of state law and does not warrant federal habeas relief.

**<u>Facts of the Case</u>**

On April 7, 2004, police responded to a radio call about a suspicious vehicle parked at 2409 South Hudson in Oklahoma City. Tr.Vol.I, pp. 44-46; 65. The occupants of the vehicle told the officers that they were watching 2312 South Hudson because they thought the occupants of that two-story duplex were making methamphetamine. Tr.Vol.I, p. 45. The officers proceeded to the house, where they smelled a strong noxious chemical odor associated with methamphetamine laboratories. Tr.Vol.I, pp. 45-46; 65-67. Tony Brantley, Michael Whitworth and Terry Williams were standing outside the duplex and these individuals were placed in investigative detention. *Id.* Although Mr. Brantley told police that there were no other people inside the duplex, three other individuals, Petitioner, Mary Appleton, and Honey Michael, eventually exited from the downstairs dwelling, and these individuals were also placed in investigative detention. Tr.Vol.I, p. 47.

3

Because of the strong chemical odor emanating from the house, a HAZMAT Unit was called to secure the premises. Tr.Vol.II, pp. 49; 68-69. After the most dangerous chemicals had been removed, investigators found numerous items associated with the process of manufacturing methamphetamine strewn throughout the downstairs dwelling, the front yard, a shed attached to the building, and in the van Petitioner had driven to the duplex. Tr.Vol. I, pp. 83-104. Testing eventually demonstrated that the items recovered at the scene included chemical ingredients used in the process of manufacturing methamphetamine, byproducts of the process, actual completed methamphetamine, and marijuana. Tr.Vol.II, pp. 93-114. The investigation further revealed that Ms. Michael, who was Mr. Brantley's girlfriend at the time, was renting the downstairs apartment where most of the drug related materials were found. Tr.Vol.III, p. 133.

In addition to searching the residence, police also searched the van which Petitioner had driven with Ms. Appleton to the South Hudson duplex. In the van police found two propane tanks, a gallon of water, starter fluid, alcohol, peroxide, miscellaneous tubing and an insurance verification form with Petitioner's name on it. Tr.Vol.I, pp. 83-84.

Petitioner, Brantley, Whitworth, Michael, Appleton, and Williams were conjointly and variously charged in a six-count third amended complaint. O.R., pp. 70-74 (Third Amended Information, Case No. CF-2004-2261).[4]

_____

[4]From a review of the docket sheet it appears the charges against the other defendants were disposed of as follows: Defendant Brantley was tried and convicted on certain charges in August of 2005; Defendant Michael plead guilty to certain charges in December of 2004; Defendant Appleton plead guilty to certain charges in May of 2006; and the charges against Defendants

(continued...)

At his trial in March of 2006 Petitioner testified that he was not involved with the methamphetamine operation at the duplex. Tr.Vol.V, p. 42. According to Petitioner, he had called Brantley earlier in the evening and arranged to meet him at the garage next to the duplex to retrieve his car that had been repaired by Brantley. Tr.Vol.V, pp. 33-35. Petitioner further testified that he and Ms. Appleton had purchased the items confiscated from the van at a Wal-Mart store that night for legitimate uses. Tr.Vol.V, pp. 34-35.

**Standard Governing Habeas Corpus Review**

Where a petitioner's claims have been adjudicated on the merits in state court, this Court may grant habeas corpus relief only if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable'").

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in

_____

[4](...continued)
Whitworth and Williams appear to have been dismissed. *See* The Oklahoma State Courts Network ("OSCN"), at http://www.oscn.net, *State v. Tony Brantley, et al.*, Case No. 2004-2261 (accessed January 6, 2010).

[Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)), *cert. denied*, 129 S.Ct. 1345 (2009). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (quoting *Maynard*, 468 F.3d at 671)). In conducting this deferential inquiry, the Court presumes that the state court factual findings are correct, and the burden of rebutting this presumption by clear and convincing evidence is placed on the petitioner. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

## DISCUSSION

### I.      State Court Evidentiary Ruling - Ground One

In Ground One Petitioner alleges he was denied the opportunity to fully present his defense because the trial court refused to admit testimony given by Tony Brantley at

Brantley's trial held several months earlier.[5]  Petition, p. 6.

Petitioner's defense at trial was that his presence at the scene was unrelated to the methamphetamine lab; Petitioner asserted rather that he was on the premises for the sole purpose of picking up a vehicle that Brantley had repaired.  Petitioner subpoenaed Brantley as a witness at his trial, anticipating that Brantley would support Petitioner's defense by testifying that Petitioner had indeed stopped by the duplex, to pick up his vehicle.  Tr.Vol.III, p. 122.  The trial court found that Brantley was unavailable to testify because he had claimed a valid Fifth Amendment privilege  Tr.Vol.III, pp. 158-59.[6]  *See* Okla. Stat. tit. 12, § 2804.[7] A hearing was held regarding Petitioner's request to introduce a portion of Brantley's prior transcribed trial testimony pursuant to Okla. Stat. tit. 12, § 2804(b)(1) and *United States v. Salerno*, 505 U.S. 317 (1992).[8]  Tr.Vol.IV, pp. 5-11.  The prosecutor argued in opposition

---

[5]At the time of Petitioner's trial Brantley had been convicted and his conviction was on appeal.  Tr.Vol.III, p. 120.

[6]During an *in camera* hearing the State advised the court that its questioning of Brantley would not be limited to the issue of Petitioner's presence at the duplex.  Tr.Vol.III, p. 126.  Counsel who was then representing Brantley on appeal informed the court that because Brantley's appeal was pending before the OCCA, his conviction was not final, and she had advised Brantley to invoke his Fifth Amendment privilege against self-incrimination.  Tr.Vol.III, pp. 120-21.  Then Brantley informed the court that if called to testify at Petitioner's trial, he would invoke his Fifth Amendment privilege and refuse to testify.  Tr.Vol.III, p. 158; O.R., p. 205 (Notice of Tony Brantley's Intent to Invoke his Fifth Amendment Privilge [sic] to Remain Silent").

[7]Under Oklahoma law a witness is unavailable under Okla. Stat. tit. 12, § 2804(A)(1) if he invokes his constitutional privilege against self-incrimination and refuses to testify.  *Funkhouser v. State*, 734 P.2d 815, 817 (Okla. Crim. App. 1987).

[8]Section 2804(b)(1), like Federal Rule of Evidence 804(b)(1), establishes an exception to the general exclusion of hearsay for an unavailable declarant's former testimony "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the
(continued...)

that even though the State previously had the opportunity to cross-examine Brantley, his transcribed testimony should be not be admitted at Petitioner's trial because the State's motive in cross-examining Brantley at his trial was to prove that Brantley was guilty of the drug charges, and the issue of Petitioner's involvement in the alleged drug activities was irrelevant to that purpose. Thus, the State had no motive to challenge Brantley's testimony regarding Petitioner's reason for being at the scene. Tr.Vol.IV, pp. 12-16. The trial court ruled that the State's motive for cross-examining Brantley at his trial was sufficiently different to preclude admission of Brantley's prior transcribed trial testimony. Tr.Vol.IV, p. 21.[9]

On direct appeal, the OCCA found no error in the district court's conclusion that "the State's motive would be different in the examination of Brantley at his trial and the

---

[8](...continued)
testimony by direct, cross, or redirect examination." Okla. Stat. tit. 12, § 2804(b)(1). In *Salerno*, the Supreme Court held that in order to admit testimony offered under Rule 804(b)(1), the proponent must satisfy both requirements of the rule: unavailability and similar motive and opportunity to develop the challenged testimony. *Salerno*, 505 U.S. at 321.

[9]The trial court explained:

At the Brantley trial the State was concerned primarily with Brantley and his connection to the crime and so developed examination or developed a cross-examination in that regard. The opposite situation exits here. It would be expected that the State would vigorously cross-examine the witness concerning this co-defendant's involvement and all other areas of this co-defendant's places, times, when he got there, when he didn't get there and his involvement at this case. And so, therefore, it's just a completely different motive as to this defendant. The State just would not know all of the relevant tissues surrounding the defendant's involvement and, therefore, would have a separate motive to develop the testimony.

Tr.Vol.IV, p. 21.

examination of Brantley in [Petitioner's] trial" and held that Brantley's transcript testimony was properly excluded under Okla. tit. 12, § 2804(B)(1). Response, Ex. 3, pp. 2-3. The OCCA further found that Petitioner "was not prevented from presenting his defense that he was at the Hudson location solely to pick up his repaired car," noting that "[c]o-defendant Honey Michael testified that Mr. Brantley fixed cars in the adjacent garage and that someone was coming over that night to pick up a car."[10] *Id.*, p. 3.

To the extent Petitioner challenges the trial court's application of the state evidence code, specifically Okla. Stat. tit. 12, § 2804(b)(1), in excluding the testimony at issue, he fails to state a claim for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (habeas corpus relief will not be granted for errors of state law). The relevant question in this habeas action is whether exclusion of the testimony violated Petitioner's federal constitutional rights. *Id.* at 68. "[S]tate evidentiary determinations ordinarily do not present federal constitutional issues" unless "a state court applies the State's evidentiary rules unfairly to prevent a defendant from presenting evidence that is critical to his defense." *Romano v. Gibson*, 239 F.3d 1156, 1166 (10th Cir. 2001) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), and *Green v. Georgia*, 442 U.S. 95, 97 (1979)). *See also Washington v. Texas*, 388 U.S. 14, 19 (1967) (holding the right to present witnesses and establish a defense is "a fundamental element of due process of law"). "[T]o determine whether a defendant was

---

[10]In addition, the undersigned notes that Petitioner himself testified that his only reason for going to Brantley's duplex was to pick up his car which had been repaired by Brantley. Tr.Vol.IV, pp. 32-40.

unconstitutionally denied his or her right to present relevant evidence, [the court] must balance the importance of the evidence to the defense against the interests the state has in excluding the evidence." *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997). Further,

> [T]o establish a violation of . . . due process, a defendant must show a denial of fundamental fairness . . . . It is the materiality of the excluded evidence to the presentation of the defense that determines whether a petitioner has been deprived of a fundamentally fair trial. Evidence is material if its suppression might have affected the outcome. In other words, material evidence is that which is exculpatory - evidence that if admitted would create reasonable doubt that did not exist without the evidence.

*Ellis v. Mullin*, 326 F.3d 1122, 1128 (10th Cir. 2002) (quoting *Richmond*, 122 F.3d at 872). *See also Romano*, 239 F.3d at 1168 ("[W]e need ask no more than whether the trial court's application of this state evidentiary rule excluded critical exculpatory evidence.").

Petitioner challenges the trial court's exclusion of Brantley's trial transcript testimony based on its finding that the State did not have a similar motive when cross-examining Brantley at his trial. The "similarity of motive conclusion" is a factual finding to which the federal habeas court is required to give deference under 28 U.S.C. § 2254(d)(2). *See Salerno*, 505 U.S. at 326 (Blackmun, J., concurring) (stating the Fed. R. Evid. 804(b)(1)'s "similar-motive inquiry . . . is inherently a factual inquiry" made after comparing the "similarity of the underlying issues" and the context of the prior questioning).

The record in this case supports the exclusion of the testimony. First, because there was no charge of a conspiracy among the various co-defendants, Brantley's opinion at his own trial as to Petitioner's involvement in the illegal drug activity was not relevant to the State's objective of convicting Brantley. *See* O.R. pp. 70-71 (Third Amended Information,

Case No. CF-2004-2261). In the hearing held during Petitioner's trial, the State argued that during Brantley's trial, the State was focused only on Brantley's connection to the illegal methamphetamine operation. Tr.Vol.IV, p. 21. Petitioner fails to suggest or establish any reason or motive the State would have had at Brantley's trial to develop testimony about Petitioner's involvement in the illegal drug manufacturing and/or possession of such drugs. *Cf. United States v. Powell*, 894 F.2d 895, 901 (7th Cir. 1990) (affirming decision to exclude guilty plea hearing testimony of co-conspirator who asserted intent to invoke privilege against self-incrimination; explaining that government's motives in examination of co-conspirator at plea hearing were to assure guilty plea was voluntary and to establish factual basis for plea on the record, not the pursuit of defendant's involvement).

Moreover, even if the similar motive requirement were met, Petitioner fails to show that the proffered testimony satisfies the materiality requirement. *Ellis*, 326 F.3d at 1128. According to Petitioner's defense counsel, Brantley had indicated he would testify, as he did at his own trial, that he was operating a mechanics shop from the South Hudson address and that on April 7 Petitioner had come to pick up his repaired vehicle and had only been there a short time when the police arrived. Tr.Vol.III, p. 122. However, the evidentiary value of such testimony would have been extremely weak. Petitioner fails to show that Brantley's excluded testimony was critical to his defense. Petitioner himself testified that Brantley had a car repair shop at the South Hudson address, that he had left a vehicle there for Brantley to repair, and that he had arranged to retrieve the repaired vehicle on the night of the arrests. Tr.Vol.IV, pp. 32-36. Co-defendant Honey Michael testified that she had entered a blind

plea of guilty in the case[11] and that she was the only person involved in manufacturing methamphetamine. Tr.Vol.III, pp. 133, 149. Michael corroborated the allegation that Brantley, her boyfriend, repaired cars in a garage adjacent to the South Hudson dwelling and, she further testified that "someone" was going to pick up a car that evening. Tr.Vol.III, pp. 132-34. There is no reason to believe that the testimony of convicted co-defendant Brantley would be any more credible that of Petitioner or convicted co-defendant Michael.

Moreover, there was substantial evidence of Petitioner's guilt. Such evidence included the testimony of Ms. Appleton that on April 7 she and Petitioner drove "to his [Petitioner's] trailer to pick up some supplies" including propane, chemicals, and iodine, Tr.Vol.IV, p. 23, some of which Petitioner carried into Brantley's house, Tr.Vol.IV, p. 40, after which Appleton and Petitioner drove to Wal-Mart and purchased additional supplies for making methamphetamine (starter fluid, a big bottle of iodine and Ziplock bags) before returning to Brantley's house, Tr.Vol.III, pp. 36-38; the strong chemical smell emanating from the apartment from which Petitioner emerged, Tr.Vol.I, pp. 45-46; 65-67; Petitioner's admission that he noticed a "weird" smell while he was in the apartment but did not know its source, Tr.Vol.IV, p. 39; and Petitioner's own testimony that he warned the other occupants in the apartment to vacate the premises "before the cops come in with the guns and stuff." Tr.Vol.IV, p. 41.

---

[11]The district court docket shows that on December 1, 2004, Ms. Michael was convicted pursuant to her plea of guilty to manufacturing methamphetamine, possession of methamphetamine, possession of a precursor substance without having obtained a permit and possession of a firearm while committing a felony. *See* OSCN, at http://www.oscn.net, *State v. Honey Lee Michael*, Case No. 2004-2261 (accessed January 6, 2010).

For all these reasons, the undersigned finds that Petitioner has failed to show that the exclusion of Brantley's proffered trial transcript testimony would create a reasonable doubt where none existed before. *Ellis*, 326 F.3d at 1128. Under these circumstances, the undersigned finds that Petitioner has failed to show that his trial was rendered fundamentally unfair by the trial court's exclusion of Brantley's prior trial testimony. Accordingly, Petitioner has failed to show that the OCCA's rejection of his claim in Ground One was contrary to or an unreasonable application of Supreme Court law, 28 U.S.C. § 2254(d), and it recommended that habeas relief be denied on this claim.

## II.    Double Jeopardy - Ground Two

In Ground Two of his habeas petition, Petitioner alleges that his convictions of manufacturing methamphetamine and possession of methamphetamine violate "double jeopardy." Petition, p. 7 (citing the Fifth and Fourteenth Amendments of the United States Constitution). On direct appeal, Petitioner alleged that his convictions violated the Fifth Amendment's prohibition against double jeopardy, arguing that the one act of manufacturing methamphetamine necessarily encompassed the crime of possession of methamphetamine. Response, Ex. 1, pp. 10-14.[12]  In rejecting Petitioner's double jeopardy claim, the OCCA applied its decision in *Davis v. State*, 993 P.2d 124, 125 (Okla. Crim. App. 1999, which in turn relied upon the United States Supreme Court decision in *Blockburger v. United States*,

_____

[12]On direct appeal Petitioner also argued that his convictions violated Oklahoma's statutory double jeopardy prohibition, Okla. Stat. tit. 21, § 11. In his habeas petition Petitioner has alleged a violation of Oklahoma's statutory multiple punishments provision.

284 U.S. 299, 304 (1932). Response, Ex. 3, pp. 3-4. The Court determined that "[b]ased on the same evidence test," Petitioner "was charged with two distinct crimes, one is manufacturing and the other is possession." *Id.*, p. 4.

The federal double jeopardy clause prohibits "multiple punishments for the same offense." *Brown v. State of Ohio*, 432 U.S. 161, 165 (1977) (citations omitted). "[W]here the same act or transaction constitutes a violation of two statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). On review of habeas claims involving multiple punishment, this Court determines only whether the sentencing court has imposed greater punishment than the legislature intended. *See Missouri v. Hunter*, 459 U.S. 359, 365 (1983).

The undersigned finds that Petitioner's convictions and sentences do not violate the federal prohibition against double jeopardy. The elements of the offense of manufacturing a controlled dangerous substance, methamphetamine (Count One) are: (1) knowingly, (2) manufacturing, (3) the controlled dangerous substance of methamphetamine. Okla. Stat. tit. 63, § 2-401(G)(1) (Supp. 2004); *see also* O.R., p. 244 (Jury Instruction No. 22). The elements of Count Two, possession of a controlled dangerous substance (methamphetamine), are: (1) knowing and intentional; (2) possession; (3) of the controlled dangerous substance, methamphetamine. *See* Okla. Stat. tit. 63, § 2- 402(A)(1) (2001); *see also* O.R., p. 245 (Jury Instruction No. 23).

Thus, the crimes charged in Counts One and Two are separate because Count One

required proof of manufacture which Count Two did not require, and Count Two required proof of possession of methamphetamine that Count One did not. In light of the difference in proof required on Counts One and Two, Petitioner has failed to show that his federal rights against double jeopardy were violated. *See Milburn v. Hines*, No. 05-7007, 2005 WL 1972604, *1 (10th Cir. Aug. 17, 2005)[13] (holding that imposition of sentences for both manufacturing methamphetamine and unlawful possession of methamphetamine did not constitute double punishment in violation of double jeopardy clause, as Oklahoma statutes under which defendant was convicted had different elements and required distinct and separate proof); *Hubbard v. Dorsey*, No. 95-2085, 1996 WL 67197, at *2 (10th Cir. Feb. 16, 1996) (affirming denial of federal habeas relief because convictions involving "trafficking" and "possession with intent to distribute" required different evidence under New Mexico law and thus did not implicate double jeopardy). Accordingly, the OCCA's rejection of Petitioner's federal double jeopardy claim is neither contrary to nor an unreasonable application of Supreme Court precedent law and it is recommended that relief be denied on Ground Two.

## III.   Fourth Amendment Claim - Ground Three

In Ground Three, Petitioner asserts that he is entitled to habeas relief because his convictions were based on evidence seized prior to the issuance of a valid search warrant, in violation of his rights under the Fourth Amendment. Petition, p. 9. Respondent argues that

---

[13]This and any other unpublished dispositions are cited as persuasive authority pursuant to Tenth Circuit Rule 32.1

this claim is not reviewable in a § 2254 action because such claim was fully and fairly litigated in state court. Response, pp. 9-11.

In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Such opportunity may be provided either at trial or on direct review.  *Stone*, 428 U.S. at 494-95 n.37 ("we hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review .").  *See also Chavez v. Rodriguez*, 540 F.2d 500, 502 (10th Cir. 1976) (*per curiam*) (holding that a hearing on a motion to suppress and the consideration of the issue on appeal satisfied "[t]he dictates of *Stone*"); *Brown v. Sirmons*, 515 F.3d 1072, 1082-83 (10th Cir.), *cert. denied*, 129 S.Ct. 403 (2008).

As Respondent contends, the record demonstrates that Petitioner had a full and fair opportunity to litigate this claim in state court. On direct appeal, Petitioner argued that he had standing[14] as a social guest to challenge the search and seizure of the South Hudson duplex and that because no exigent circumstances warranted the intrusion of the officers into the

---

[14]In order for Petitioner to challenge the constitutionality of the search, he must be able to establish that he has standing to do so.  *See Katz v. United States*, 389 U.S. 347, 353 (1967) (an individual may object to a search only if he or she has "a legitimate expectation of privacy in the invaded place").

residence before a valid search warrant was issued, the search was illegal. Response, Ex. 1, pp. 14-16 (citing *United States v. Rhiger*, 315 F.3d 1283 (10th Cir. 2003)). The OCCA noted the Court's holding in *Rhiger* that standing to challenge a search requires the defendant to show "that he had subjective expectation of privacy in the premises searched and that society is prepared to recognize that expectation as reasonable." Response, Ex. 3, p. 4. The OCCA further noted that the defendant in *Rhiger* established his status as a social guest "by showing his regular presence at the home, his overnight stays, the discovery of his receipts in the house, and his comfort in entering the residence unannounced and taking a nap." *Id.* (citing *Rhiger*, 315 F.3d at 1285-86). The OCCA concluded that Petitioner did not have standing to challenge the search of the Hudson duplex based on the following facts:

> In the instant case, there was no evidence of [Petitioner's] regular presence oat the Hudson duplex, or any overnight stays, or of any receipts or person items that belong to [Petitioner] at the residence. Additionally, [Petitioner] testified that he called co-defendant Brantley to find out if he could come over to pick up his car.

*Id.*, pp. 4-5.

Petitioner's assertion that he was "not afforded a full and fair determination" of his Fourth Amendment claim is conclusory and without factual support. Petitioner's Reply p. 4. The record clearly shows that Petitioner had an opportunity on direct appeal to present his Fourth Amendment argument, and in fact did so. Such claim should therefore not be heard in this § 2254 proceeding. *See Stone*, 428 U.S. at 494-95. Accordingly, Petitioner is not entitled to habeas relief on Ground Three.

## IV.    Excessive Sentence - Ground Four

In his final ground for relief Petitioner contends that the sentences imposed by the jury constitute excessive, disproportionate, cruel and/or unusual punishment. Petition, p. 11. On direct appeal, Petitioner argued that as a 54-year-old offender, his concurrent sentences totaling 50 years imprisonment represent a life sentence and constitute excessive, constitutionally impermissible, and cruel and/or unusual punishment. Response, Ex. 1, pp. 18-20 (citing *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Solem v. Helm*, 463 U.S. 263 (1983); *Harkins v. Hargett*, 200 F.3d 1279, 1282 (10th Cir. 1999)).

The OCCA found that the punishment declared by the jury – 50 years for manufacturing methamphetamine and 30 years for possessing methamphetamine – was within the range of punishment set by the legislature for habitual offender offenses. Response, Ex. 3, p. 5.[15] The OCCA rejected Petitioner's argument that such sentence was so disproportionate as to "shock the conscience" of the court. *Id.*, p. 6. This conclusion was reasonable under Supreme Court precedents, foreclosing habeas relief.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (citation and internal quotations omitted).[16] The proportionality

---

[15]As noted by the OCCA, punishment for manufacturing methamphetamine, after two or more felony convictions, ranged from twenty-one years to life imprisonment and a fine of not more than $150,000. Response, Ex. 3, p. 5. The range of punishment for possession of methamphetamine, after two or more felony convictions, was six years to life imprisonment. *Id.*

[16]Respondent's argument that Petitioner's sentencing issue raises only a state law claim not
(continued...)

principle, however, "reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003). *See also United States v. Gillespie*, 452 F.3d 1183, 1190-91 (10th Cir. 2006) (summarizing Supreme Court precedent on the proportionality principle and noting that "the [Supreme] Court has only twice invalidated a sentence under the Eighth Amendment: once in 1910, when the defendant was sentenced to fifteen years in chains and hard labor for falsifying a public document; and most recently in 1983, when the defendant was sentenced to life without parole after committing six nonviolent felonies including writing a bad $100-dollar check") (citations omitted). In determining whether there is "gross disproportionality," the Tenth Circuit has weighed "a variety of factors, including the seriousness of the crime, the fit between the punishment and the crime, and the existence of legislative determinations of an appropriate sentence range." *Milburn v. Hines*, 2005 WL 1972604,* 2 (citing *Hawkins*, 200 F.3d at 1284-85).

Here, Petitioner's current offenses were serious, and there is therefore a "fit between [the] punishment and [the] crime." *Hawkins*, 200 F.3d at 1284. *See United States v. Scroger*, 98 F.3d 1256, 1259-60 (10th Cir. 1996) ("it is well established that drug manufacturing is a serious crime") (citation omitted); *see also Milburn*, 2005 WL 1972604,* 2 (rejecting an Eighth Amendment challenge to a sentence, reasoning in part that the offense of manufacturing methamphetamine was "serious"). Further, because of his two prior felony

[16](...continued)
cognizable in a habeas proceeding, Response, pp. 12-13, fails to recognize (1) the AEDPA's narrow standard of review which directs the Court to first determine "clearly established" Supreme Court jurisprudence and (2) the Supreme Court's recent decisions addressing the proportionality issue in noncapital cases.

drug convictions, Petitioner was eligible for enhanced sentences – up to life imprisonment – on both convictions. As found by the OCCA, each of the sentences imposed is fully consistent with the applicable range for a habitual offender under Oklahoma law. *Hawkins*, 200 F.3d at 1285 (courts "are reluctant to interfere with the legislative determination of an appropriate sentence range").

In light of the nature of Petitioner's crimes, as well as the Supreme Court's benchmarks, and the legislature's proper role in setting sentencing ranges, the undersigned cannot say that Petitioner's sentence is grossly disproportionate to the acts he committed. Thus, Petitioner fails to present the extraordinary case needed to establish a violation of his Eighth Amendment rights. *Compare Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) (holding that a sentence of life without parole is not disproportionate to a first-time offender's conviction of possession of cocaine). Accordingly, the undersigned finds that the OCCA's rejection of this claim was neither contrary to nor an unreasonable determination of the facts presented in the state court proceeding. Petitioner is not entitled to habeas relief on this claim.

## RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by March 1, 2010, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both

factual and legal questions contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir.

1991).  This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter.

ENTERED this 8th day of February, 2010.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE